Brian S. King, #4610
**BRIAN S. KING, PC**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorney for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ANNE S., DAVID S., and RYAN S., <br><br> Plaintiffs, <br><br> vs. <br><br> AETNA CHOICE POS II PLUS MEDICAL PLAN, AETNA LIFE INSURANCE COMPANY, and VANDERBILT UNIVERSITY, <br><br> Defendants. | COMPLAINT <br><br> Civil No. |

Plaintiffs Anne S. ("Anne"), David S. ("David"), and Ryan S. ("Ryan"), collectively known as "Plaintiffs" or "S. family", through their undersigned counsel, complain and allege against Defendants Aetna Choice POS II Plus Medical Plan ("the Plan"), Aetna Life Insurance Company ("Aetna"), and Vanderbilt University ("VU") as follows.

**PARTIES, JURISDICTION AND VENUE**

1. Anne, David, and Ryan are natural persons residing in Williamson County, Tennessee. Anne is Ryan's mother; David is Ryan's father.

2. VU is a private university located in Nashville, Tennessee. During the relevant time frame, VU was David's employer.

1

3. The Plan is a self-funded group health benefit plan sponsored by VU for its employees and their dependents. David was a participant in the Plan and Anne and Ryan were beneficiaries of the Plan.

4. The Plan is an employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

5. Aetna is a corporation doing business in the State of Utah and across the United States. Aetna is the claims administrator for the Plan.

6. Ryan received medical care and treatment in the State of Utah at Discovery Ranch ("DR"), a residential treatment facility providing mental health care to adolescents aged thirteen to eighteen.

7. Aetna and the Plan denied some of Ryan's claims for payment of his medical expenses in connection with his treatment at DR.  This lawsuit is brought to obtain this Court's order requiring the Plan to pay Ryan's unpaid expenses incurred during his treatment at DR.

8. This Court has jurisdiction of this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

9. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) because the Defendants do business in Utah and the medical treatment at issue in this case was provided in the State of Utah. Based on ERISA's nationwide service of process provision and 28 U.S.C. § 1391, venue is appropriate in the state of Utah.

10. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

Case 2:16-cv-00466-CW-DBP   Document 2   Filed 06/02/16   Page 3 of 11

## BACKGROUND FACTS

### Ryan's Developmental and Medical Background

11. Ryan is the youngest of three children. Anne and David adopted Ryan when he was 1 month old. Ryan's older siblings are Anne and David's biological children.

12. Ryan met most developmental milestones.

13. From age 3 to 8, Ryan had speech difficulties with delayed expression and poor grammar. He was easily distracted, sensitive to sensory stimuli, exhibited a marked fear of crowded places, and experienced issues with perfectionism.

14. Ryan demonstrated slow fine motor development, was very slow to toilet train (age 4), experienced difficulty in pre-Kindergarten and Kindergarten with cutting, holding pencils etc. Ryan could not tie his shoes until he was in 5th grade.

15. From age 6 to 14, Ryan had difficulty concentrating, organizing tasks, demonstrated a persistent fear of social or performance based situations, had difficulty engaging in playful activities, exhibited excessive anxiety, worry, apprehension, and experienced anxiety related impairment in social functioning.

16. From age 12 to his admittance to a wilderness program, Ryan demonstrated depressed mood, lied frequently, blame shifted, was easily annoyed and angered, defied or refused to comply with rules, was argumentative, and was destructive.

17. Ryan began outpatient therapy and was prescribed medications for focus and anxiety/depression when he was in 6th grade.

18. When Ryan was in 9th grade, he began to exhibit a noted increase in all symptoms including, but not limited to, cutting his clothing, bed sheets and furniture and expressing anger in inappropriate ways.

3

19. Ryan began participating in outpatient therapy when he was in sixth grade. This therapy continued without satisfactory reduction in his symptoms.

**Ryan's Treatment at DR**

20. In June of 2014, Ryan was admitted to Second Nature Wilderness Program ("Second Nature").

21. At Second Nature he received mental and behavioral health therapy in an outdoor wilderness setting.

22. At the recommendation of Ryan's treating physicians at Second Nature, Ryan was transferred to DR.

23. Ryan was admitted to DR on September 16, 2014.

24. At the time of his admission to DR, Ryan was diagnosed as follows:

        AXIS I        314.00 Attention Deficit Hyperactivity Disorder, Predominantly Inattentive Type
                        315.9 Learning Disorder NOS
                        300.00 Anxiety Disorder NOS
                        300.4 Dysthymic Disorder
        AXIS II
        AXIS III
        AXIS IV
        AXIS V        CURRENT GAF: 39[1]

25. Ryan was unhappy about being placed in a residential treatment program, but despite his negative feelings, he committed to his treatment plan. The medical records document frequent declines in progress but Ryan's condition slowly improved.

---

[1] G.A.F., or global assessment of functioning, was developed as a tool for mental healthcare providers to assess the overall level of functioning and ability to carry out activities of daily living for their patients. There is a separate scale utilized when the patient is a child or adolescent. A GAF of 39 on the child's global assessment scale indicates "Major impairment in functioning in several areas and unable to function in one of these areas, ie, disturbed at home, at school, with peers, or in the society at large, e.g., persistent aggression without clear instigation; markedly withdrawn and isolated behavior due to either mood or thought disturbance, suicidal attempts with clear lethal intent. Such children are likely to require special schooling and/or hospitalization or withdrawal from school (but this is not a sufficient criterion for inclusion in this category)." D. Shaffer, M.S. Gould, H. Bird, and P. Fisher Modified from: Rush J, et al: Psychiatric Measures, APA, Washington DC, 2000.

26. Ryan continued to experience difficulty in interacting with peers while in treatment. He struggled with processing and working through his feelings of social isolation.

27. While Ryan showed improvements in his ability to identify, express, and manage his feelings, he continued to experience social anxiety and struggled to participate in group activities.

28. Ryan's Discharge Summary, dated January 22, 2016, states that Ryan's final Discharge Diagnosis was Generalized Anxiety Disorder, Depressive Disorder, NOS, ADHD, Gaming Addiction, Nonverbal Learning Disorder.

29. The Discharge Summary stated that Ryan did not complete the program, but that he had made as much progress as possible at DR and had reached four out of five levels in the program. The Discharge Plan recommended continued individual therapy, family therapy, volunteer work, and a part time job for Ryan.

**The Plan's Denial of Coverage and the S. Family's Appeal**

30. Claims were submitted to Aetna and coverage for treatment was approved through October 14, 2014. However, claims after October 14, 2014 were denied. Claims were also submitted directly to VU.

31. In the Initial Denial letter from Aetna, dated October 15, 2014, Aetna states in part:

> (Not a Covered Benefit Denial) This coverage denial was based on the terms of the member's benefit plan document (such as the Certificate of Coverage or benefit plan booklet, including any amendments or riders). The requested service is not covered. The plan provides limited or no coverage for this service. Please see the section of the benefit plan document that talks about what the plan covers.

32. The letter dated October 15, 2014 failed to identify which section of the Plan Aetna was using to make the determination that Ryan's treatment was not covered.

33. Anne appealed the denial of coverage on March 27, 2015. In her appeal, Anne provided among other documents, excerpts from the Plan which detail that Ryan's treatment at DR was, in fact, covered.

34. Among other things, Anne argued that Ryan was receiving active treatment at a licensed healthcare facility for his mental health conditions and she included a copy of the facility's licensure as an exhibit to her appeal.

35. Anne also argued that Aetna's denial conclusions fell short of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA") and Patient Protection and Affordable Care Act of 2010 ("PPACA") requirements. Finally, she argued that the denial should have contained specific references to language in the Plan stating that mental health residential treatment was not covered under the Plan.

36. Aetna maintained the denial on behalf of the Plan in a letter dated August 27, 2015, over five months after Anne had submitted her appeal. The denial letter, in its entirety, contained two pages of text and two pages of appeal instruction paperwork. The denial letter stated:

> Thank you for your correspondence we received on 3/31/2015. We reviewed your concerns and would like to share the results of our review with you.
>
> We have found the original determination is correct. Below you will find the details of our review and the outcome of the appeal.
>
> Review/Determination
> This appeal is about the following issue(s):
> Denial of Inpatient MH Residential Treatment from October 15, 2014 to January 31, 2015
>
> Amount of Claim: $6048 $11,340 $11,718 $11,718
> Denial Code(s): 840 – These expenses are not covered as this facility does not meet the plan definition of a Residential Treatment Facility.
>
> We reviewed all available information, including:

> - your appeal,
> - the plan benefits and
> - Aetna's clinical policies.
>
> Our decision
> Based on our review of the above we are upholding the previous decision for the above listed services.
>
> How we made our decision
>
> Based on a review of the member's SPD and submitted documentation regarding licensing and staffing provided by the facility, this facility does not meet criteria for a Residential Treatment Facility.
>
> Residential Treatment Facility (Mental Disorders)
> This is an institution that meets all of the following requirements:
> - On-site licensed Behavioral Health Provider 24 hours per day/7 days per week.
> - Provides a comprehensive patient assessment (preferably *[sic]*
>
> A complaint and appeal nurse and a complaint and appeal analyst who was not involved in any prior decision, participated in the review of the appeal.
>
> Access to relevant information
> At your request, we will give you free of charge access to copies of all documents, records, and other information about your claim for benefits, including the specific rule, guideline, protocol, or other similar criterion that was used in making the decision, and the names of any clinical reviewers if applicable. Your provider may have sent diagnosis and treatment codes with your initial request. To obtain these codes and their meanings, call us at the Member Services number on your member identification card. If you have medical questions about your diagnosis or treatments, contact your provider.

37. Anne requested a second level appeal on November 10, 2015, which was submitted to Aetna, and per the terms of the plan, forwarded by Aetna to VU.

38. Anne again argued that Ryan's active treatment at a licensed mental health care residential treatment facility was a covered benefit. Anne also argued that DR is considered a "Behavioral Health Provider" because DR is a licensed residential treatment facility and also meets Utah Administrative Code Rule R501-19 which requires that DR follow the residential treatment program requirements for staffing and service.

7

39. Anne argued that by requiring DR, a non-network residential facility, to have clinical staff on-site twenty-four hours a day, seven days a week ("24/7") to qualify for coverage when Aetna does not require 24/7 clinical staffing for its network providers, Aetna was violating the terms of the Plan and ERISA's claims processing regulations.

40. Aetna failed to respond to Anne's direct argument about why Aetna's action violates the MHPAEA. Anne argued that the continued denial of the treatment services Ryan received while at DR demonstrated non-compliance with the MHPAEA.

41. VU upheld the denial in a letter dated February 23, 2016.

42. VU's letter stated that the denial was being upheld on the basis of exclusions in the Summary Plan Description ("SPD") and Plan Language. The letter stated:

> The Vanderbilt University Human Resources Benefits Office received your appeal regarding the denial of the inpatient confinement services at Discovery Ranch, LLC. The Medical Director has reviewed the submitted appeal along with the relevant plan materials and a decision has been made to **deny the appeal request** (*original emphasis*) based upon the following criteria:
> - Pages 40-43 of the Aetna plan document detail treatment for Mental Disorders and Substance Abuse, as well as exclusions to coverage. On page 43, the list of exclusions specifically lists "wilderness programs or other similar programs."
> - The medical director contacted the provider to learn if they had a specific treatment program that may possibly allow us to participate in the expenses but did not receive a call back for over a 2 week period from a designated person.
> - Pages 12-15 of the Aetna plan document provide for the precertification procedure. On page 13, the plan states that "precertification is required for…stays in a Residential Treatment Facility for treatment of mental disorders and substance abuse." The Health Plan does not have a record of pre-certification approval for this service.

43. VU failed to identify who reviewed the first level appeal, what their qualifications were, and what criteria they used to form their determination.

44. VU failed to address any of the direct questions Anne posed in her appeals and repeatedly failed to reference specific information, medical records, and other documents it used to

8

determine that the facility did not meet the plan definition for a Residential Treatment Facility.

45. VU improperly raised an alleged failure to pre-certify the treatment as a basis for denial. First, the care *had* been pre-certified as evidenced by the authorization and coverage of the first twenty-nine days of treatment.  Second, even if the care had not been pre-certified, a failure to pre-certify does not result in or justify outright denial but, rather, may lead to a reduced amount of reimbursement for claims.

46. VU also failed to address the requirements of the MHPAEA and failed to engage in a meaningful dialogue that would allow Anne to respond to any legitimate concerns VU or the Plan may have had.

47. VU failed to consider the substance of the information and arguments presented to Aetna by Anne in her appeal letters.

48. The denial of benefits for Ryan's care after October 15, 2014 was a breach of contract and caused the S. family to incur medical expenses that should have been paid by the Plan in an amount exceeding $150,000.00.

49. Anne exhausted her appeal obligations under ERISA.

## CAUSE OF ACTION

**(Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))**

49. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators.  It sets forth a special standard of care upon a plan fiduciaries such as Aetna, acting as an agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan.  29 U.S.C. §1104(a)(1).

50. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process.  29 U.S.C. §1133(2).

51.  Aetna, VU, and the Plan breached their fiduciary duties to Ryan when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in Ryan's interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of Ryan's claims.

52. The actions of Aetna, VU, and the Plan, in failing to provide coverage for Ryan's medically necessary treatment at DR are a violation of the terms of the Plan.

53. The actions of Aetna, acting as an agent for the Plan, in failing to provide a timely response to Anne's first appeal, is a violation of the terms of ERISA and its underlying regulations and a violation of the terms of the Plan.  Aetna's failure to respond within the time frames designated by ERISA and the Plan calls for a *de novo* standard of review of the claim by this Court.

54. The actions of Aetna, VU, and the Plan, as outlined above, have caused damage to the S. family, in the form of denial of payment for medical services provided to Ryan from September 16, 2014 through his discharge on January 15, 2016 in an amount exceeding $155,000.

55. Aetna, VU and the Plan are responsible to pay Ryan's medical expenses as benefits due under the terms of the Plan together with prejudgment interest pursuant to U.C.A. §15-1-1, attorney fees and costs pursuant to 29 U.S.C. §1132(g).

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for Ryan's medically necessary mental health treatment at DR under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

3. For such further relief as the Court deems just and proper.

DATED this 2nd day of June, 2016.

By    s/ Brian S. King   
   Brian S. King
   Attorney for Plaintiffs

County of Plaintiffs' Residence:
Williamson, TN